**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **DAVID WOOTEN,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Case No. 5:23-cv-00064-TES-CHW** |
| | : | |
| **ALICIA WARD,** *et al.*, | : | **Proceedings Under 42 U.S.C. § 1983** |
| | : | **Before the U.S. Magistrate Judge** |
| **Defendants.** | : | |
| | : | |

## REPORT AND RECOMMENDATION

Plaintiff David Wooten, a state inmate, filed a *pro se* civil rights complaint seeking relief under 42 U.S.C. § 1983 regarding an incident in Wilcox State Prison. (Doc. 6). Defendant Alicia Ward, the remaining defendant, now moves for summary judgment. (Doc. 30). Plaintiff has responded and opposes the motion. (Doc. 35). As discussed below, the undisputed facts show that Defendant was not deliberately indifferent to a substantial risk of serious harm. Therefore, it is **RECOMMENDED** that Defendant's motion for summary judgment (Doc. 30) be **GRANTED**.

## BACKGROUND

Plaintiff brought this action on January 20, 2023, alleging claims for deliberate indifference to safety against multiple defendants. (Doc. 1). Following screening of Plaintiff's recast complaint (Doc. 6) under 28 U.S.C. § 1915(a)(1), the Court allowed Plaintiff to proceed on his deliberate indifference to safety claim against Defendant Ward. (Doc. 7). In his deliberate indifference claim, Plaintiff alleges that Defendant failed to intervene when Plaintiff was attacked by his cellmate. (Doc. 6).

Defendant filed an answer which raised the defenses of failure to state a claim, sovereign immunity, and qualified immunity, among others. (Doc. 18). The parties then engaged in a period of discovery, including the deposition of the Plaintiff. *See* (Doc. 30-3). Defendant has now filed a motion for summary judgment. (Doc. 30).

## SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment bears the burden of informing the Court of the basis for its motion, and of citing "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that support summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In resolving motions for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

Although Plaintiff responded to Defendant's motion for summary judgment (Doc. 35), he did not specifically respond to Defendant's statement of material facts as required by Local Rule 56. *See* MDGA Local Rule 56. This failure could trigger consequences under both the federal Rules of Civil Procedure and this Court's Local Rules. Federal Rule of Civil Procedure 56(e)(2) provides that if a party "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2). This Court's Local Rule 56 similarly provides: "All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." MDGA Local Rule 56. Nevertheless, the Court has reviewed the record of

evidence, including Plaintiff's deposition testimony, to confirm the facts set forth in Defendant's statement.

Finally, Federal Rule of Civil Procedure 56(e)(3) provides that the Court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to" summary judgment. FED. R. CIV. P. 56(e)(3). *See also Urdaneta v. Wells Fargo Bank, N.A.*, 734 F. App'x 701, 704 (11th Cir. 2018). Accordingly, because Defendant properly supported her factual assertions with specific citations to the record, and because Plaintiff failed to dispute Defendant's facts by specific citation to the record, the Defendant's facts may be accepted by the Court as undisputed.

## RELEVANT FACTS

Before the Court is Plaintiff's deliberate indifference to safety claims stemming from an August 15, 2022 assault by Plaintiff's cellmate. (Docs. 6, 7, 35). Many of the facts in this case are undisputed. Plaintiff was incarcerated at Wilcox State Prison (WSP) from December 2021 until August 2022. (Doc. 30-3, p. 15).[1] Defendant is a Unit Manager at WSP and has worked in that role for seven years. (Doc. 30-4, ¶ 2). Prior to the incident, Plaintiff was housed in a single-man cell at WSP. (Doc. 30-3, p. 17). Plaintiff was then informed that he would be moving to a two-person cell in the J-1 dormitory, with inmate Joshua Foster as his roommate. (*Id.*, p. 18–19). Plaintiff told Defendant that that he "was on PC at the time." (*Id.*, p. 18–19). As Plaintiff was entering the two-man cell, inmate Foster told Defendant that "he wasn't accepting a roommate." (*Id.*, p. 18–19). Plaintiff had never met nor had any communication with inmate Foster before this

---

[1] The page numbers on Document 30-3, Plaintiff's deposition, differ from the page numbers in the Court's file. This Recommendation uses the page numbers from the actual deposition.

exchange. (*Id.*, p. 18). The pair "never had any fights or problems" during their nine days as cellmates prior to the date of the incident. (*Id.*, p. 18, 25).

On the date of the assault, Plaintiff was housed in the J-1 dormitory, two-man cell with inmate Foster. (Doc. 30-3, p. 16–17). At about 10:30 a.m. on August 15, 2022, Defendant escorted Plaintiff and inmate Foster to the shower. (*Id.*, p. 20, 48–49). Plaintiff took the first shower, and Defendant told him it was time to finish up. (*Id.*, p. 21). Plaintiff did not know where inmate Foster was during this time. (*Id.*, p. 21). After exiting the shower, Plaintiff told Defendant that he was not comfortable living with inmate Foster because Foster had been sharpening knives during the night and was taking Plaintiff's food trays. (*Id.*, p. 21, 23, 25). Plaintiff stated that he was uncomfortable in his cell and that he wanted to see a mental health counselor. (*Id.*, p. 23-24). Plaintiff testified that Defendant refused this request and threatened to use a taser or pepper spray if Plaintiff did not exit the shower. (*Id.*, p. 24). Plaintiff was placed in handcuffs with his hands in front of him. (*Id.*, p. 24, 30). Defendant walked ahead of Plaintiff down the hall and proceeded to open the cell door and stand outside waiting on Plaintiff. (*Id.*, p. 24, 26). Inmate Foster was already inside the cell without restraints. (*Id.*, p. 27). When Plaintiff entered the cell, Foster attacked him with a homemade knife. (*Id.*, p. 27, 29–31).

Defendant radioed for help, and Sergeant Quantavious Stewart arrived in less than four minutes.[2] (Doc. 30-4, ¶ 2; Doc. 30-3, p. 32). Defendant testifies in her affidavit that she did not enter the cell during the fight because security practice and procedure dictates that a single officer should not intervene, but rather should call for assistance. (Doc. 30-4, ¶ 3). Before Sergeant Stewart arrived, Plaintiff subdued inmate Foster and pinned him against the wall to stop the attack.

---

[2] Plaintiff testified in his deposition that the fight lasted for three to four minutes, whereas Defendant testified in her affidavit that Sergeant Stewart responded in "1 minute (possibly less)." (Doc. 30-4, ¶ 2; Doc. 30-3, p. 32). The record is construed in the light most favorable to Plaintiff.

(Doc. 30-3, p. 31–33). By this point, inmate Foster had stabbed Plaintiff multiple times in the head, neck, and arms. (*Id.*, p. 31, 43–44). Plaintiff successfully calmed inmate Foster down and was backing away as Sergeant Stewart entered the cell ordering inmate Foster to drop the knife. (*Id.*, p. 31–37). Sergeant Stewart deployed his taser on inmate Foster while Plaintiff exited the cell. (Doc. 30-4, ¶ 3; Doc. 30-3, p. 37–40). Plaintiff walked to the medical unit and was subsequently transported to the hospital where he received staples and stitches for multiple stab wounds. (Doc. 30-3, p. 43–45, 46–48). Plaintiff was discharged from the hospital that evening and returned to a different cell in WSP. (*Id.*, p. 48, 50). Plaintiff has not interacted with inmate Foster since the date of the incident. (*Id.*, p. 54). Defendant testifies in her affidavit that she was not aware of any specific threats against Plaintiff prior to the incident, and that Plaintiff did not inform her of any threats or that he feared an assault from inmate Foster. (Doc. 30-4, ¶ 4).

## ANALYSIS

Plaintiff claims that Defendant failed to intervene during an inmate attack. As discussed below, the undisputed facts, construed in the light most favorable to Plaintiff, show that Defendant did not act with deliberate indifference to Plaintiff's safety before or during the attack. Defendant is entitled to summary judgment.

### 1. Defendant was not deliberately indifferent to a substantial risk of serious harm.

The Eighth Amendment prohibits "a prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate" because "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 828, 833 (1994) (citations omitted). Not "every injury suffered by one inmate at the hands of another" translates into constitutional liability, however. *Id.* at 834. To establish a deliberate indifference

claim, Plaintiff "must allege facts sufficient to show (1) a substantial risk of serious harm; (2) [Defendant's] deliberate indifference to that risk; and (3) causation." *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal quotations omitted). Plaintiff must show that Defendant "was subjectively aware that [Plaintiff] was at risk of serious harm" and that Defendant "acted 'with subjective recklessness as used in the criminal law'" in disregarding that risk. *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (quoting *Farmer*, 511 U.S. at 839). Even if the risk was known, Defendant may still not be found liable, so long as she acted reasonably. *Id.* at 1255 (citing *Farmer*, 511 U.S. at 844, 837).

### a. *Substantial Risk of Serious Harm*

Turning first to whether Plaintiff faced a substantial risk of serious harm, this element "is assessed objectively and requires [Plaintiff] to show 'conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety.'" *Marbury v. Warden*. 936 F.3d 1227, 1233 (quoting *Lane*, 835 F.3d at 1307). While "an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm[,] occasional, isolated attacks by one prisoner on another may not" arise to a substantial risk. *Lane*, 835 F.3d at 1307 (quoting *Harrison v. Culliver*, 746 F.3d 1288, 1299 (11th Cir. 2014)). Defendant does not appear to dispute that there was a substantial risk of serious harm but, rather, contends that Plaintiff is unable to show that Defendant was subjectively aware of a risk of attack. (Doc. 30-2, p. 6).

### b. *Defendant Was Unaware of Risk.*

The second element of a deliberate indifference claim requires evidence that Defendant had subjective knowledge of a risk of serious harm and that Defendant "acted with subjective recklessness as used in the criminal law" in disregarding that risk. *Wade*, 106 F.4th at 1255

(internal quotations omitted). Subjective awareness requires that Defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (quoting *Farmer*, 511 U.S. at 837). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. The trier of fact may, therefore, "conclude that a [defendant] knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

The version of the facts most favorable to the non-movant shows that Plaintiff told Defendant that he was supposed to be "on PC" (protective custody) rather than sharing a room with inmate Foster. (Doc. 30-3, p. 19–20). Over a week later, on the date of the incident but prior to the attack, Plaintiff told Defendant he was not comfortable living with inmate Foster. (*Id.*, p. 23–25). "I'm not comfortable where I'm living at. This guy, he sharpening knives all night and he—he telling me I can't eat, taking my trays and stuff." (*Id.*, p. 23). This statement alone does not give rise to constitutional liability because the "known risk of injury must be a strong likelihood, rather than a mere possibility before [Defendant's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citation and internal quotation marks omitted); *e.g. Nelson v. Tompkins*, 89 F.4th 1289, 1296 (11th Cir. 2024), *appeal docketed*, No. 23-1374 (U.S. July 02, 2024). Before the attack, Plaintiff and inmate Foster had not had any fights or disputes. (Doc. 30-3, p. 18, 25).

The Court "will not allow the advantage of hindsight to determine whether conditions of confinement amounted to 'cruel and unusual' punishment" when Plaintiff himself testified that he did not understand how the attack happened because he did not have any problems with inmate

Foster. *Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga*, 400 F.3d 1313, 1320 (11th Cir. 2005); (Doc. 30-3, p. 25). Thus, Plaintiff's allegations that Defendant had subjective knowledge of a risk of serious harm may amount to, at most, negligence, but a defendant's negligent failure to protect a plaintiff from a risk of harm will not impose § 1983 liability. *Brown*, 894 F.2d at 1537 (citing *Davidson v. Cannon*, 474 U.S. 344, 347–48 (1986)). The evidence shows that Defendant was unaware of a "particularized threat or fear" and so she was unable to draw an inference "that a substantial risk of serious harm exists."[3] *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (citation omitted).

Even if the Court were to construe inmate Foster's actions prior to the incident as threatening, the unfortunate reality remains that "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Marbury*, 936 F.3d at 1236 (11th Cir. 2019) (quoting *Prater v. Dahm*, 89 F.3d 548, 542 (8th Cir. 1996)). Although Plaintiff told Defendant that he was uncomfortable, that alone does not arise to the particularized threat requirement. (Doc. 30-3, p. 23–25). Plaintiff has not established that he told Defendant of any particularized fears he had regarding inmate Foster prior to the attack and admits that he did not have any problems with inmate Foster. (*Id.*, p. 25).

Plaintiff's allegation that Defendant violated policy is not dispositive. (Doc. 6, p. 6). Plaintiff contends that WSP policy dictates "each prisoner should be in restraints before the door is open of a lockdown unit" (*id.*), but there is no further evidence of this policy in the record. Plaintiff's assertion of policy violations in his response to Defendant's motion for summary

---

[3] In his response to Defendant's motion for summary judgment, Plaintiff contends that he "stated everyday to [Defendant] that he feared for his life. . . ." (Doc. 35, ¶ 2). Plaintiff provides no evidence for this assertion in the record, however. *See* (Doc. 30-3, p. 23–25 (stating only that he was uncomfortable)). Even if this unsworn statement in a response brief is considered as evidence, it is insufficient to establish the particularized threat required to demonstrate deliberate indifference.

judgment does not establish a genuine issue of material fact necessary to proceed on a claim of deliberate indifference to safety.[4] (Doc. 35, ¶ 8). A violation of prison policy could only provide a basis for a claim of negligence, and such a policy violation does not provide a sufficient basis for liability under § 1983. *See Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000) ("[F]ailure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence."). Thus, Plaintiff has failed to present evidence to "support a reasonable jury's finding that [Defendant] harbored a subjective awareness that [Plaintiff] was in serious danger." *Marbury*, 936 F.3d at 1238.

### c. *Defendant Acted Reasonably.*

Even if Plaintiff could establish that Defendant was subjectively aware of a substantial risk to his safety, Defendant "may be found free from liability if [Defendant] responded reasonably to the risk, even if the harm ultimately was not averted." *Wade*, 106 F.4th at 1257 (quoting *Farmer*, 511 U.S. at 844). The determination of whether a risk has been disregarded is objective: "the [defendant] must have responded to the known risk in an unreasonable manner." *Marbury*, 936 F.3d at 1233; *Wade*, 106 F.4th at 1255. In other words, "a defendant who 'respond[s] reasonably' to risk, even a known risk, 'cannot be found liable' under the Eighth Amendment." *Wade*, 106 F.4th at 1255 (quoting *Farmer*, 511 U.S. at 844, 837). Plaintiff has failed to rebut Defendant's showing that a reasonable response occurred.

Plaintiff's testimony, construed in the light most favorable to the non-movant, does not show that Defendant acted in an unreasonable manner. Plaintiff asserts that inmate Foster attacked him when he entered the cell. (Doc. 30-3, p. 29). Defendant radioed for help, and Sergeant Stewart

---

[4] "Material facts not supported by specific citation to particular parts of materials in the record . . . will not be considered by the court." MDGA Local Rule 56.

arrived shortly thereafter. (Doc. 30-4, ¶ 2; Doc. 30-3, p. 32). Between radioing for help, and

Sergeant Stewart arriving, inmate Foster stabbed Plaintiff multiple times with a homemade knife

before Defendant was able to subdue him. (Doc. 30-3, p. 31–33).

For § 1983 liability to attach, Defendant must actually have been in a position to intervene.

*Terry v. Bailey*, 376 Fed.Appx. 894, 896 (11th Cir. 2010). Plaintiff has the burden of demonstrating

Defendant "was in a position to intervene but failed to do so." *Ledlow v. Givens*, 500 F. App'x

910, 914 (11th Cir. 2012) (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1330–31 (11th Cir. 2008)).

In Plaintiff's own words, inmate Foster was roughly 6 feet, 200 pounds, and "no small guy." (Doc.

30-3, p. 31). Defendant was armed with, at most, pepper spray and a taser.[5] (Doc. 30-4, ¶ 4). Rather

than physically intervene in the attack, Defendant radioed for help. (Doc. 30-4, ¶ 2; Doc. 30-3, p.

32). As courts in this district have previously explained, "[r]egardless of the presence or absence

of a weapon in the hands of the attacking inmates, 'no rule of constitutional law requires unarmed

officials to endanger their own safety in order to protect a prison inmate threatened with physical

violence.'"[6] *Washington v. Taylor*, No. 5:19-cv-178, 2020 WL 4760143, at *8, n. 18 (citations

omitted); *see also Moore v. Castro*, No. CV 317-002, 2019 WL 613573, at *8 (S.D. Ga. Jan. 17,

2019) (finding that a prison official who did not intervene in an inmate attack while carrying a

---

[5] In her signed declaration, Defendant states she carries pepper spray but is silent as to whether she carried a taser at the time of the incident. (Doc. 30-4, ¶ 4). Plaintiff testified that prior to the incident Defendant had "threatened [him] with a taser" if he did not comply with a demand to exit the shower. (Doc. 30-3, p. 24). The Court must construe the evidence in the light most favorable to Plaintiff and accept as fact that Defendant was armed with a taser, as well as pepper spray, during the incident.

[6] Other Circuits addressing this issue in similar situations have consistently held there is no duty to intervene. *See Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995) ("[P]rison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm."); *Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997) ("[A]ll of the authority of which we are aware leads to the conclusion that such heroic measures are not constitutionally required.").

taser and O.C. spray was not liable under § 1983), <u>report and recommendation adopted,</u> No. CV 317-002, 2019 WL 591462, at *1 (S.D. Ga. Feb. 13, 2019).

Plaintiff has not established that Defendant had a realistic chance to intervene in the knife attack. Further, Plaintiff has "presented no evidence from which a reasonable jury could find that [Defendant] could have anticipated and then stopped [the attack]." *Hadley*, 526 F.3d at 1331. Thus, Defendant acted reasonably in radioing for help and committed no constitutional violation in not physically intervening.

### 2. Defendant is entitled to qualified immunity.

When considering whether summary judgment is appropriate based on qualified immunity, the Court "[draws] all inferences and [views] all of the evidence in the light most favorable to the nonmoving party." *Jones v. Michael*, 656 F. App'x 923, 925 (11th Cir. 2016) (internal quotations omitted). "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Marbury*, 936 F.3d at 1232 (internal quotations omitted). Defendant "cannot obtain qualified immunity unless [she establishes that she] was acting within [her] discretionary authority." *Underwood v. City of Bessemer*, 11 F.4th 1317, 1328 (11th Cir. 2021).

The internal security of prisons is "normally left to the discretion of prison administrators." *Rhodes v. Chapman*, 452 U.S. 337, 349 n.14 (1981). Plaintiff fails to dispute Defendant's assertion that Defendant was acting within the scope of her discretionary authority. Because it is undisputed that the decisions regarding prison administration fall within Defendant's discretionary authority

and Plaintiff's lack of opposition, the Court finds Defendant acted within the scope of her discretionary authority. *See, e.g., Goebert v. Lee Cnty.*, 510 F.3d 1312, 1329 (11th Cir. 2007).

Once action under discretionary authority has been established, "the burden shifts to the plaintiff, who must show [Defendant] is not entitled to qualified immunity." *Underwood*, 11 F.4th at 1328. "At [this] stage, [the Court asks] two questions: (1) 'whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right,' and (2) if so, 'whether the right at issue was 'clearly established' at the time of [Defendant's] alleged misconduct.'" *Id.* at 1328 (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Both must be present for Plaintiff to prevail. *Id.* Thus, Plaintiff must show a violation of a constitutional right to survive summary judgment.

As discussed above, Plaintiff has not met his burden to show that Defendant violated his constitutional rights. Because Plaintiff failed to establish a violation of a constitutional right, there is no need to examine the second prong of the qualified immunity analysis. Defendant is entitled to qualified immunity as a matter of law.

## CONCLUSION

Because the undisputed facts do not support Plaintiff's deliberate indifference claims, it is **RECOMMENDED** that Defendant's motion for summary judgment (Doc. 30) be **GRANTED**.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. Any objection is limited in length to **TWENTY (20) PAGES**. *See* MDGA Local Rule 7.1. The District Judge shall make a *de novo* determination

of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 17th day of September, 2024.


s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge